JANVIER, Judge.
This is a suit for workmen’s compensation. Plaintiff originally claimed to have been totally and permanently disabled as a result of an industrial accident which is alleged to have taken place on August 27, 1958. It seems to have become evident that the evidence would make it extremely doubtful that plaintiff could base disability, if he was disabled, on an accident which *655 occurred on that day, if there was an accident, so he, to some extent, altered his claim and attemped to show that he had for a long time suffered from an arthritic condition which was lighted up or accelerated by an accident which had occurred in October, 1957, and also by the accident originally relied on as having occurred on August 27, 1958.
Thus when the matter was submitted in the District Court, the contention of plaintiff was that his original arthritic condition had been worsened by the two alleged accidents and that, as a result, he had become totally and permanently disabled.
It was and is the position of the defendant employer that plaintiff for many years had suffered from an arthritic condition which was progressively growing worse; that there were no accidents in August, 1958, or in October, 1957, and, therefore, plaintiff’s condition was not worsened as the result of accident, and that, in fact, he is not disabled.
There was judgment dismissing plaintiff’s suit and he has appealed.
As already stated, it was originally claimed that plaintiff had been injured in an accident which took place on August 27, 1958, which was a Wednesday. He said that he was unloading a heavy bathtub from a truck which he had been driving for the defendant employer and that he suffered a sprain of the back and that pains in the back resulted. He admits that he said nothing to anyone connected with his employer at the time except that a man, who was standing by and who has not been identified, noticed his condition and said that he would have volunteered to help but that he himself was suffering from a painful back.
Plaintiff remained at work all of that day and on the next day, Thursday, and, on Friday afternoon, said to his “boss” that he wanted to see his doctor and he asked permission to leave for this purpose. He made no mention of an accident and did not ask to go to the doctor of the employer, but went to Dr. Irving Redler, an orthopedist specialist, who was his own private doctor and who had been treating him for many years, having first seen him in 1951. Dr. Redler said that hé made no mention to him of the occurrences of an accident. Plaintiff was not required to work over that weekend, and he did not work on the Monday following which was Labor Day, but two or three days after Labor Day — it is not made certain which — he asked for a “slip” in order to see the company’s doctor, and again he made no mention of an accident, but merely said that his back was hurting. He was sent to Dr. Richard A. Faust who said that he asked plaintiff whether he had had an accident and that plaintiff had said “no”, there had been no accident. He was later examined by Dr. Ploward Karr, an orthopedic expert. Dr. Karr said that he made no mention of an accident.
The record leaves no doubt at all that since 1951 plaintiff had been suffering from myofascitis of the gluteal muscle, and Dr. Redler, who had treated him for that condition in 1951, said that when he called on him on that Friday prior to Labor Day in 1958, he found the same condition from which plaintiff had been suffering since 1951, but that that condition had grown progressively worse. Dr. Redler says that the condition which he found could have resulted from a “sudden incident, such as a wrench of his back, or some lifting injury, or it could have just come over a long period, as in clinical treatment for trauma.” Dr. Redler was asked if it was usual to find this condition “sometimes being repreated several times in an individual,” and he answered: “It is not uncommon that it will happen, as it happened in this case.”
An interesting thing about the statements made by the plaintiff to Dr. Redler is that they show unquestionably that the treatment which Dr. Redler had been giving him for his pains were having a diminishing beneficial effect until the point was reached at which it was felt that those *656 alleviating treatments would not be effective and that an operation should be performed.
In order to show that the condition originally existing was growing progressively worse and was yielding less and less to alleviating treatment, we refer to testimony which shows the following:
He first went to see Dr. Redler in 1951. Dr. Redler relieved the pain with a local anesthetic. In November, 1957, Dr. Red-ler found the same condition except that the pain was more extensive. He says: “I gave him the same type of treatment for the pain. I injected the area with a local anesthetic, which relieved the pain.” Less than one month later, on December 11, 1957, he saw Dr. Redler again who “gave him the same type of treatment for the relief of pain.” Dr. Redler says: “ * * * I didn’t see him again until the 29th of August, 1958,” and at that time “his condition * * * was identical,” and that he gave him the same type of treatment which was a “local anesthetic.” Plaintiff returned to Dr. Redler on October 1, 1958, with “the same pain” and received temporary relief from a “local anesthetic.” One week later he again returned to Dr. Redler and told Dr. Redler “that it was his opinion that the periods of relief from these injections were getting shorter and shorter.”
During none of these visits did he tell Dr. Redler anything about an accident. Unquestionably he had been suffering all the time from his original complaint which had been gradually growing worse and that this worsening was in no way caused by any alleged accidents. Our opinion in this regard to some extent is based' on the testimony of the other doctors. Dr. Llewellyn said that he “accepted the diagnosis of degenerative arthritic disease of the lowermost lumbar disc * * Dr. Llewellyn was asked: “* * * you cannot testify that Leonard Miller is disabled can you?” and he answered: “That’s right. It was my feeling that his complaints were largely attributable to this arthritic condition which has been documented.”
Still another physician, Dr. George Thomas, had treated plaintiff. Counsel for defendant during the trial asked that he be permitted to telephone Dr. Thomas who was not present. Rather than wait for Dr. Thomas to appear there was a stipulation as to what Dr. Thomas would have said had he been present. It was agreed that he would have stated that he saw plaintiff on numerous occasions (he treated him for a complaint which obviously had no connection with the complaint which he now makes), that he saw plaintiff first on August 9, 1957, which was prior to either of the alleged accidents, and at that time plaintiff complained of “urinary discharge and low back pain,” and that he concluded that this was caused by “chronic prostatitis.” Dr. Thomas later saw him on at least twelve occasions and on all but one — when he was suffering from Flu — he found him suffering with the same prostatic complaint.
In a statement which plaintiff had given to the employer he had been asked whether any doctor had told him that he could not go back to work driving a truck and he answered: “ * * * no one ever told me that.”
It is also shown that in the statement to which we have referred he had said that he had first noticed the pain on which his claim is now founded on a Sunday when he was on his way to church. He was asked whether at that time he had been working and he answered: “I wasn’t working then.”
Our conclusion is that plaintiff has completely failed to show that he was injured as the result of any accident, or, in fact, that he is actually disabled. We are certain that any complaint which he now has is the result of a gradual worsening of a degenerative condition which was in no way aggravated by an industrial accident.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.